BRIAN D. BERKOFF, Appellant-Appellee, *v.* ROBERT K. HASEGAWA, Director of Labor and Industrial Relations, State of Hawaii, et al., Appellees-Appellants.

No. 5371

September 27, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

This case raises the issue of when a "valid claim" is filed and a "benefit year" established for payment of unemployment insurance benefits under the Hawaii Unemployment Security Law, HRS Chap. 383. The case originated as an appeal to the circuit court on an agreed statement of facts and questions from a decision of a Department of Labor and Industrial Relations (hereinafter referred to as the "Department") referee for unemployment compensation appeals.

Claimant Brian Berkoff, having been employed as a car washer in Honolulu from July 6, 1970, voluntarily terminated his employment and moved to Hilo, Hawaii sometime prior to January 16, 1971. Claimant first filed a claim for unemployment insurance benefits at the Hilo office of the Department's Unemployment Insurance Division on January

22, 1971. At that time, the Department informed claimant that he was disqualified from receiving benefits because he had voluntarily terminated his employment without good cause.[1]

Claimant found new employment with a construction company three days after filing the claim, and therefore did not pursue his rights under this claim. He was employed continuously until May, 1971, when he was laid off from work.

Claimant filed a second application for unemployment insurance benefits in May, but again found new employment within four days. He was again ineligible for benefits.

Claimant was employed continuously until August 2, 1971, when he was laid off from work. He filed a third application for unemployment insurance benefits on that date. The Department then informed him that on February 4, 1971, the Unemployment Insurance Division had established his benefit year beginning January 17, 1971 and ending January 16, 1972, and his weekly benefit amount was determined to be $30.00.

Claimant appealed this determination. He believed that his base period should not have ended and his benefit year begun until August 2, 1971. He believed that he should have received credit for work he had performed since January, in which case his weekly benefit amount would substantially exceed $30.

Claimant's appeal was heard on September 10, 1971, and the referee's decision affirming the Department's initial determination was handed down on November 18, 1971. Claimant appealed to the circuit court, presenting the following questions:

1. Is a "valid claim" made, and a benefit year established, whenever an application is filed and the

---

[1]HRS § 383-30 Disqualification for benefits. An individual shall be disqualified for benefits:

(1) Voluntary separation. For any week in which he has left his work voluntarily without good cause and for not less than two or more than seven consecutive weeks of unemployment which immediately follow such week, as determined according to the circumstances in each case.

applicant has worked the required period of time, or must the applicant also be qualified to receive benefits before a claim can be deemed a "valid claim"?

2. Is Appellant [Claimant] entitled to benefits as of August 2, 1971?

The circuit court held that an applicant must be qualified to receive benefits before a claim can be deemed a "valid claim" and a benefit year established thereby. The Department's determination that claimant's benefit year began on January 17, 1971 was found to be in error, and the court ordered that his benefit year be deemed to begin on August 2, 1971.

We affirm.

The computation of unemployment insurance benefits is preceded by a determination of the claimant's base period and benefit year. The base period is defined in HRS § 383-1(1) as "the four completed calendar quarters immediately preceding the first day of an individual's benefit year." HRS § 383-1(3) defines the terms "benefit year" and "valid claim":

(3) " 'Benefit year' with respect to any individual means the one-year period beginning with the first day of the first week with respect to which the individual first files a valid claim for benefits and thereafter the one-year period beginning with the first day of the first week with respect to which the individual next files a valid claim for benefits after the termination of his last preceding benefit year. *Any claim for benefits made in accordance with section 383-32 shall be deemed a 'valid claim' for the purpose of this paragraph if the individual has been paid the wages for insured work required under section 383-29(5).* For the purposes of this paragraph a week with respect to which an individual files a valid claim shall be deemed to be 'in', 'within', or 'during' that benefit year which includes the greater part of such week." (Emphasis added)

HRS § 383-32 provides as follows:

*Filing of claim.* Claims for benefits shall be made in accordance with such regulations as the department of

labor and industrial relations may prescribe.

HRS § 383-29(5) (C) provides as follows:

(C) In the case of an individual whose benefit year begins on or after January 2, 1966, he has had during his base period a total of fourteen or more weeks of employment . . . and has been paid wages for insured work during his base period in an amount equal to at least thirty times his weekly benefit amount as determined under section 383-22(b).

HRS § 383-22(b) provides that the weekly benefit amount shall be "an amount equal to one twenty-fifth of his total wages for insured work paid during the calendar quarter of his base period in which such total wages were highest."

The "benefit year" is the one year period during which a claimant may receive the benefits earned from employment during his base period. HRS § 383-23 provides that a claimant may receive a maximum of 26 weekly benefit payments during his benefit year. The Department argues that employment during the course of the benefit year, although for the required fourteen week duration and at a higher or lower wage than during the base period, does not change the weekly benefit amount payable during the present benefit year, once a valid claim has been established and the weekly benefit amount initially determined.

The Department contends that a claim is valid upon determination that the claimant has received wages for at least fourteen weeks of insured work, regardless of whether the claimant is presently eligible for benefits. The initial Application for Determination of Insured Status is used to determine both the insured claimant's liability for benefits and his former employer's liability for benefit payments. HRS §§ 383-61 - 69 provides that an employer's annual contribution to the unemployment contribution fund is based on his experience of benefit payments charged to his account. Because the initial determination is administratively time consuming, the Department argues that:

Provisions . . . which require that the individual must meet other tests in addition to the monetary requirement

before he can establish a benefit year are administratively undesirable. U.S. Department of Labor, Bureau of Employment Security, *Unemployment Insurance Legislative Policy: Recommendations for State Legislation* 5 (1962).

We cannot agree with the Department's interpretation of the law. HRS § 383-29 lists other requirements which a claimant must meet each week before he is eligible to receive benefits:

(1) he must have filed a claim for benefits for that week;

(2) he must have registered for work at an employment office;

(3) he must be able to work and available for work;

(4) he must have "been unemployed for a waiting period of one week within his benefit year," during which week he was otherwise eligible for benefits or not disqualified under HRS § 383-30 (however he may retroactively receive benefits for the waiting period if he is eligible to receive benefits for the next 12 consecutive weeks); and

(5) he must have established the requisite work history, as discussed, *supra*.

In addition HRS § 383-30 stipulates that a claimant shall be disqualified for benefits for a suspension period if he voluntarily left his previous employment without good cause; was discharged for misconduct; failed to report to the employment office for work; was participating in a work stoppage; has made a false representation concerning his employment; or is eligible for other unemployment benefits.

We hold that where a claimant files a claim for unemployment insurance benefits for which he is determined ineligible or disqualified because he has not satisfied one or more of the above conditions, "it would require a strained construction of the language of the Law to hold that such constitutes a 'valid claim' ". *Hartsville Cotton Mill v. South Carolina Emp. S. Comm'n*, 224 S.C. 407, 412, 79 S.E.2d 381, 383 (1953).

We have held that the provisions of the Hawaii Unemployment Security Law should be liberally construed in order to achieve the beneficent legislative purpose of "relief of workers under the stress of unemployment occasioned through no fault of their own." *Bailey's Bakery v. Tax Commissioner*, 38 Haw. 16, 28 (1948). We must be guided by this principle in determining when claimant Berkoff became eligible for unemployment insurance benefits.

In January, claimant was determined disqualified for benefits because he had voluntarily terminated his employment without good cause. The South Carolina Supreme Court, in construing a similar statute under a similar set of facts, held that a valid claim cannot be filed until the claimant is no longer disqualified for benefits. *Hartsville Cotton Mill v. South Carolina Emp. S. Comm'n*, *supra*, 224 S.C. 407, 79 S.E.2d 381 (1953). The court reversed a decision of the South Carolina Employment Security Commission affirming a determination that a claim was valid and that a benefit year and benefit amount established, where claimant had also been found "unavailable-ineligible" for benefits or had failed to meet any of the other benefit eligibility conditions.

The Kentucky Supreme Court, in construing a similar statute, adopted the reasoning of the South Carolina court. Kentucky Revised Statutes § 341-090(2) defines "valid claim" as:

> any initial claim for benefits if the worker has satisfied the conditions required under subsection (5) of KRS § 341.350.

Subsection (5) describes the minimum base period wages by amount and period of time. In *Kentucky Unemp. Ins. Comm'n v. Anaconda Aluminum Co.*, 433 S.W.2d 119, 121 (Ky. 1968), the court held that:

> the validity of a claim is determined by whether benefits are allowed. If benefits are disallowed, the claim is not valid; . . .

The policy underlying these decisions is clear. Where a claimant was disqualified for benefits, as claimant Berkoff was in January, 1971, and no benefits were collected on the

claim, the claim filed was not a valid claim.

The claim filed in May, 1971, presents a different issue. Claimant had been laid off from his second job and was no longer disqualified for benefits for voluntary separation, as he had been in January. The Department had made an initial determination of his eligibility in January, and it is presumed that the only condition he did not satisfy in May was the waiting period requirement of HRS § 383-29(4). At the time he had not been unemployed for a waiting period of one week within his benefit year.

In *In re Jullin*, 23 Wash. 2d 1, 158 P.2d 319 (1945), the Washington Supreme Court construed a similar statute with a waiting period requirement of one week during which the claimant was otherwise eligible for benefits. The claimant in this case filed his claim five days after his discharge. No payments were ever made under this claim, however. The Unemployment Compensation Division's initial determination of benefits payable under his valid claim, and liability therefor was challenged by his former employer.

The Washington court held that his purported claim never became a completed, valid claim, because claimant did not establish the facts necessary to qualify for unemployment compensation benefits. The Division had no legal right to make an initial determination based on a claim that was premature and incomplete.

The Division argued that its "initial determination" was valid for the purpose of fixing the amount of benefits *potentially payable* to claimant during the benefit year, in the event claimant should again become unemployed for a week or more. The court rejected this argument:

> Thus, upon an imperfect and initially invalid claim, a definite benefit, envisaging prospective payments at some future time, is conferred upon the claimant and a distinct detriment is imposed upon the employer.

> If an individual is ineligible to receive any benefits at all under his claim, there is no foundation for giving him a status which will permit him in the future to apply for and

receive payments computed solely on the basis of an "initial determination" predicated upon a prior invalid claim. *In re Jullin,* 23 Wash. 2d 1, 15, 17, 158 P.2d 319, 325, 326 (1945).

We adopt the reasoning of *In re Jullin.* We find that the claim filed in May, 1971 did not become valid so as to entitle the claimant to benefits because claimant had not been unemployed for a waiting period of one week.

Claimant became eligible to receive unemployment benefits in August, 1971. The Department contends that at that time he reopened his claim for benefits. We find that claimant could not reopen a claim filed previously under which he received no benefits but that he filed a valid claim for unemployment insurance benefits on August 2, 1971.

We hold that a valid claim for unemployment insurance benefits is filed and a benefit year established when a claimant has worked the required period of time, is eligible to receive benefits under the other provisions of HRS § 383-29, and is not disqualified for benefits under the provisions of HRS § 383-30. Where an initial determination is made that a claimant is ineligible or disqualified for benefits, no benefit year is established and the claim filed is not valid.

Affirmed, and ordered that appellees-appellants, the Department of Labor and Industrial Relations, shall determine appellant-appellee Berkoff's benefit year to begin on August 2, 1971, with such rights and benefits as shall follow therefrom.

*Roy M. Miyamoto,* Deputy Attorney General (*George Pai,* Attorney General, with him on the briefs) for appellees-appellants.

*Arne T. Henricks* (Hawaii Legal Services Project, Legal Aid Society of Hawaii) for appellant-appellee.