## APPLICATION OF MARY P. HORNER, Widow of Roy Horner, Deceased

NO. 5461

JUNE 10, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI, OGATA AND MENOR, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Applicant Mary P. Horner, the widow of Roy Horner, is a claimant for compensation under HRS Ch. 351[1] as a dependent of a victim of certain crimes enumerated therein,[2] among which are manslaughter, aggravated assault or battery, or intermediate assault or battery. Following a hearing on the claim, the Criminal Injuries Compensation Commission (hereinafter referred to as the Commission) denied the claim by Decision and Order on November 6, 1972. In response to the writ of mandamus issued by this court in *Horner v. Criminal Injuries Comp. Comm'n,* 54 Haw. 294, 506 P.2d

---

[1] HRS § 351-1 provides in pertinent part:

The purpose of this chapter is to aid victims of criminal acts, by providing compensation for victims of certain crimes or dependents of deceased victims . . . .

[2] The crimes are enumerated at HRS § 351-32.

444 (Feb. 16, 1973), the Commission rendered a Decision and Findings of Facts and Conclusions of Law denying the claim on March 13, 1973. From this Decision, this appeal was taken.

We reverse and remand for further proceedings in accordance with this opinion.

Roy Horner was killed in an automobile accident on Puupeelua Avenue, Hoolehua, Molokai, at approximately 4:50 a.m. on July 3, 1970. The police surmised that Horner, who had driven to the scene with Wendell Lee, had parked a Dole Co. pickup truck facing south on the west shoulder of Puupeelua, and was standing on the shoulder of the road helping Wendell Lee pour gas into a jeep which was also parked on the shoulder immediately in front of the pickup truck.

A 1957 Chevrolet, driven by Alice Cho or Pat Kauanui in a northbound direction at well over the speed limit of 35 m.p.h., crossed the center line and collided into the jeep. The Chevrolet left at least 136 feet of skidmarks before colliding into the jeep. Horner, Lee, Cho, Kauanui, and an infant passenger of the car were all killed instantly in the collision. Because there were no living eyewitnesses to the collision, no evidence exists as to exactly where Horner stood when he was struck, or whether in any way his conduct contributed to the accident.

Similarly no evidence exists as to whether the driver of the Chevrolet did not notice the vehicles parked on the shoulder of the road, or why the Chevrolet crossed the center line. The post mortem blood alcohol test for Alice Cho showed 0.20% by weight of alcohol in her blood, Patrick Kauanui's level was 0.21%. This level of alcohol in the blood was sufficient evidence to create a presumption that the driver of the Chevrolet was under the influence of intoxicating liquor at the time of the collision, a misdemeanor under HRS §§ 291-4,-5.[3]

---

[3] HRS § 291-5 provides in pertinent part:

(3) If there was fifteen-hundredths per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the

Based on the evidence adduced, the Commission determined:

The death of Roy Horner was the result of an automobile accident on Puupeelua on July 3, 1970 on Molokai. Insufficient evidence exists as to the exact cause of death, and whether or not his death was the result of his own negligence, or of his own misconduct, or of negligent homicide under HRS 748-9, or of manslaughter under HRS 748-6, or of assault under HRS 724-5, or of an intervening unknown factor which caused the Chevrolet to cross Puupeelua and cause an automobile accident.

In the face of this determination, however, the Commission erroneously decided to deny the application, stating that:

the occurrence causing the death of the victim, Roy Horner, was an automobile accident and not one of the crimes enumerated in the statute . . . .

We are cognizant that the permitted scope of our review in this case is limited to a determination of whether the Commission has observed the requirements of the law and whether its factual findings are supported by substantial evidence on the record. *In re Charley's Tour and Transportation, Inc.*, 55 Haw. 463, 522 P.2d 1272 (1974); *H.C.&D. Moving & Storage Co. v. United States*, 298 F. Supp. 746, 747 (D. Haw. 1969). The Commission's decision to deny compensation in this case was based not on a factual finding that the evidence did not warrant compensation, but on a legal conclusion that such a crime was not compensable under the statute. Where the Commission's action clearly involves the construction of the statute under which it functions, a question of law is presented for our determination. *Merrill v. Department of Motor Vehicles*, 71 Cal. 2d 907, 917, 458 P.2d 33, 39, 80 Cal. Rptr. 89, 95 (1969); *Bila v. Young*, 20 Cal. 2d 865, 867, 129 P.2d 364, 365 (1942).

---

influence of intoxicating liquor at the time of the alleged violation.
HRS § 291-4 imposes a maximum fine of $1,000 and a maximum term of one year's imprisonment for operating a motor vehicle under the influence of intoxicating liquor.

Under HRS § 351-31[4] the Commission may, in its discretion, compensate the victim or his dependents in the event any person is injured or killed by an act or omission falling within the description of crimes enumerated in HRS § 351-32. The Commission must first determine that an act or omission occurred and that the victim's injury or death occurred therefrom. The Commission must then determine whether the victim bears any share of responsibility for the crime which caused the injury or death, and which should reduce the amount of compensation accordingly. The Commission must consider the circumstances of the criminal act or omission regardless of whether any person is prosecuted for or convicted of any criminal offense.

Although the legislature may have intended to compensate only the victims who have suffered intentionally inflicted

---

[4] HRS § 351-31 provides in pertinent part:

§ 351-31 *Eligibility for compensation.* (a) In the event any person is injured or killed by any act or omission of any other person coming within the criminal jurisdiction of the State after June 6, 1967, which act or omission is within the description of the crimes enumerated in section 351-32, the criminal injuries compensation commission may, in its discretion, upon an application, order the payment of compensation in accordance with this chapter:

\*       \*       \*       \*       \*

(3) In the case of the death of the victim, to or for the benefit of any one or more of the dependents of the deceased victim.

(b) For the purposes of this chapter, a person shall be deemed to have intentionally committed an act or omission notwithstanding that by reason of age, insanity, drunkenness, or otherwise he was legally incapable of forming a criminal intent.

(c) In determining whether to make an order under this section, the commission may consider any circumstances it determines to be relevant, and the commission shall consider the behavior of the victim, and whether, because of provocation or otherwise, the victim bears any share of responsibility for the crime that caused his injury or death and the commission shall reduce the amount of compensation in accordance with its assessment of the degree of such responsibility attributable to the victim.

(d) An order may be made under this section whether or not any person is prosecuted for or convicted of a crime arising out of an act or omission described in subsection (a), provided an arrest has been made or such act or omission has been reported to the police without undue delay. No order may be made under this section unless the commission finds that:

(1) The act or omission did occur: and

(2) The injury or death of the victim resulted from the act or omission. . . .

physical harm,[5] the offenses enumerated in HRS § 351-32 are not limited to intentionally committed acts or omissions, and this section does not specifically exclude injuries inflicted by the operation of automobiles.[6] Thus where, as in this case, the evidence is sufficient to support a conclusion that the victim was killed by an act falling within the statutory definition of manslaughter,[7] the Commission abused its discretion by denying compensation to the applicant on the grounds that death resulting from an automobile accident was not one of the crimes enumerated in the statute. That the act also falls within the statutory definition of negligent homicide, a lesser included offense to manslaughter not enumerated under HRS § 351-32, is not a rational basis for denying compensation in this case.[8]

In light of the beneficent purpose of this statute, to compensate victims of criminal acts in recognition of the government's duty to protect its people from the consequences of criminal acts, we believe the Commission should construe the statute liberally in determining the eligibility of applicants. *Cf. Berkoff v. Hasegawa,* 55 Haw. 22, 27, 514 P.2d 575, 579 (1973); *Bailey's Bakery v. Tax Commissioner,* 38 Haw. 16, 28 (1948).

The Commission's decision to deny the application of Mary P. Horner on the grounds that the accident causing death was not one of the crimes enumerated under the statute

---

[5] Standing Committee Report No. 315, 1967 HAWAII SEN. JOUR. 993.

[6] Although this section was amended in 1973, Act 85, § 1, S.L.H. 1973, the amendment is not relevant to the facts of the present case, which occurred prior to the passage of the amendment.

[7] HRS § 748-6 provides in pertinent part:

*Manslaughter defined.* Whoever kills a human being without malice aforethought, and without authority, justification, or extenuation by law, is guilty of the offense of manslaughter.

[8] HRS § 748-9 provides in pertinent part:

§ 748-9 *Negligent homicide: degrees; penalties.* (a) Every person who by the operation of any vehicle in a grossly negligent manner causes the death of another, shall be guilty of the crime of negligent homicide. . . .

(b) Every person who by the operation of any vehicle in a negligent manner causes the death of another, shall be guilty of the crime of negligent homicide in the second degree.

is reversed. The application is remanded to the Commission for further proceedings consistent with this opinion and the Commission's prior findings of fact.

*Gene Bridges* for appellant

*Olen E. Leonard, Jr.,* Deputy Attorney General, *George Pai,* Attorney General (with him on the brief) for appellee Criminal Injuries Compensation Commission.