## FRANK KALIN AND OTHERS v. OLIVER IRON MINING COMPANY.[1]

April 29, 1949.

No. 34,783.

*M. H. Greenberg* and *Theodore S. Bloom,* for relators.

*William H. Crago, Jr.,* for respondent employer.

*J. A. A. Burnquist,* Attorney General, and *K. D. Stalland,* Assistant Attorney General, for respondent Director of Division of Employment and Security.

---

[1]Reported in 37 N. W. (2d) 365.

MATSON, JUSTICE.

Certiorari to review a decision of the director of the division of employment and security holding that claimants failed to file valid claims for unemployment benefits.

During 1947, relators, herein designated as the claimants, were and had for some years been employes of respondent, Oliver Iron Mining Company. Respondent followed a known and established policy of retiring employes at the end of the month in which they reached the age of 65 years. Anticipating their retirements, claimants each filed with the division's local office at Virginia, Minnesota, an initial claim for unemployment benefits while still employed by respondent and some months prior to the month in which each would attain his 65th year. Notations were made on each claimant's application card and initial claim for benefits that the claimant was filing his claim for the purpose of freezing his wage credits.

Pursuant to M. S. A. 268.10, the chief of the division's benefit section, as the director's deputy, determined these initial claims for unemployment benefits to be *valid,* subject to the right of protest and appeal by the base period employer. Respondent appealed to the division's appeal tribunal, which found that claimants had all failed to file valid claims. Claimants then appealed to the director of the division, who affirmed the tribunal's decision.

The question is whether a valid initial claim for benefits under the Minnesota employment and security law may be filed by an individual who, at the time of filing, is regularly and continuously employed but who anticipates that he will be separated from his employment some months in the future.

The determination of this question depends upon the purpose and meaning of the 1945 amendment included in M. S. A. 1945, 268.04. L. 1945, c. 376, § 1. Prior to the 1945 amendment, the present § 268.04, subd. 24, read:

" 'Valid claim' with respect to any individual means a claim filed by an *unemployed* individual who was registered for work and who has earned wage credits during his base period sufficient to entitle

him to benefits under [Mason St.] section 4337-25 B." (Italics supplied.) (Section 4337-25 B is now § 268.07, subd. 2.)

The 1945 amendment deleted the word *unemployed.* Clearly, prior to 1945, a *valid* claim could only be filed by an individual when he was actually unemployed. Claimants contend that the deletion of the word *unemployed* makes it possible for an individual to file an initial *valid* claim for unemployment benefits *while he is still regularly and continuously employed but who anticipates that he will be retired on a date some months in the future,* and thereby determine and freeze his benefit year, his base period, the weekly benefit amount, and the maximum benefit to which he is entitled, for the admitted purpose of making two benefit years available without the necessity of having at least four weeks of employment in the third and fourth calendar quarters of the base period for the second benefit year as required by § 268.07, subd. 3. Respondent contends, on the other hand, that an initial claim so filed is not *valid* and that the legislature by deleting the word *unemployed* intended only to eliminate a delay or lag period in the determination of whether a claimant is *unemployed* within the statutory meaning of § 268.04, subds. 23 and 27. Subd. 23 provides that an individual shall be deemed *unemployed* only if he be without work, or if he earn less than his weekly benefit amount, and subd. 27 defines a *week* to mean a calendar week ending at midnight of a Saturday. By reason of these definitions, it was not possible, prior to the 1945 amendment, to determine in many instances if a claimant was unemployed within the statutory meaning until after midnight of the second Saturday following the day upon which he filed his initial claim, and as a result determinations were delayed as much as 13 days.

In the ascertainment of the legislative intent, every law should be construed, if possible, to give effect to all its provisions. § 645.16. There is a presumption that the legislature intends the entire statute to be effective and certain. § 645.17(2). In the light of these rules, § 268.04, subd. 24, through the 1945 amendment, by deletion of the word *unemployed,* is to be construed, not in isolation from but in conjunction with other related sections of the Minnesota employ-

ment and security act. We turn first to § 268.07, subd. 3, which was amended at the same 1945 legislative session to prevent individuals from using wage credits earned during the base period of one benefit year for benefit purposes in a subsequent benefit year unless, in addition thereto, such individual has earned wage credits in any part of the third and fourth quarters of the base period upon which the benefits for such subsequent benefit year are based in an amount equivalent to at least four times his current weekly benefit amount. Clearly, this latter amendment was intended to forestall the possibility of an individual being able, fortuitously or otherwise, to collect benefits in two succeeding benefit years on only one separation from employment. If the claimants are permitted to file a valid claim for benefits two months or more before they are separated from their employment and thus freeze the benefit year, two benefit years will be available to them without having at least four weeks of employment in the third and fourth quarters of the base period for the second benefit year. If effect is to be given to § 268.07, subd. 3, as amended, we cannot ascribe to the deletion of the one word *unemployed* from § 268.04, subd. 24, the intent and consequence suggested by the claimants. It is to be presumed that the legislature did not intend the absurd result that the amendment of one section should nullify the amendment of a related section. § 645.17(1).

Claimants' proposed construction of § 268.04, subd. 24, is also in conflict with § 268.08, subd. 1, which in specifically defining eligibility for benefits provides that an individual shall be eligible to receive unemployment benefits only if, among other things, (1) he has registered for work and thereafter continues to report at an employment office—unless this requirement be waived by the director's regulations; (2) that he is able to work and is available for work—subject to a penalty of a one-fifth reduction in his weekly benefit for each day he is unable or unavailable for work; and (3) if he has been unemployed for a waiting period of two weeks during which he is otherwise eligible for benefits under §§ 268.03 to 268.24. Obviously, no effect would be given to the eligibility provi-

sions of this section if § 268.04, subd. 24, were to be construed to permit the filing of a valid claim by claimants while they are still regularly employed and are therefore *not* available for employment. Clearly, § 268.08, subd. 1, contemplates that an individual who registers for work—such registration being construed to be also a claim for benefits—shall either be actually unemployed or shall with reasonable immediacy be about to become unemployed, so as to be available for *new* work. It may be assumed that the legislature was aware of this related section and that it would have amended this section if it had intended the result urged by the claimants.

Claimants' sought-for statutory construction would also impair, if not wholly defeat, the provisions for appeal from the determination of the validity of a claim for benefits as set forth in § 268.10, subd. 2, which provides:

"A deputy, designated by the director, *shall promptly examine* the claims for benefits made pursuant to this section, *and,* on the basis of the facts found, *shall determine whether or not such claims are valid,* * * *. Notice of any such determination, together with the reasons therefor, shall be promptly given the claimant and all other interested parties. Unless the claimant or such other interested party, parties, or employing unit or units *within ten calendar days after the delivery of such notification,* or within 12 calendar days after such notification was mailed to his last known address, *files an appeal from such decision, such decision shall be final* and benefits shall be paid or denied in accordance therewith." (Italics supplied.)

This is the only opportunity to appeal allowed by the act. Unless the notice of determination of the validity of the initial claim for benefits is received by the employer after the claimant has been separated from his employment or after notification from the employer that the claimant will be separated in the reasonably immediate future, the employer, at the only time afforded him for appeal, would not know upon what basis he might object to the determination. For example, here one claim is filed four months

prior to the anticipated date of separation. If a prompt determination of validity is made by the deputy and sent to the employer, future acts of the employe prior to the anticipated separation date, upon which the employer might object to the payment of claims, are not known within the time allowed for an appeal. The only way such difficulty might be avoided would be for the determination of validity to be delayed until actual separation from employment or until after notice to the employe by the employer of separation in the near future. Such delay of determination would be contrary to the express language of § 268.10, subd. 2, which provides for a *prompt* examination and determination of benefit claims.

Section 268.03 expressly provides that as a guide to the courts for the interpretation of all sections from 268.03 to 268.24 the public policy of the state shall be to stabilize employment. It would not be consistent with a policy of employment stabilization to adopt a statutory interpretation permitting the filing of a valid claim for benefits by an individual who at the time of filing is regularly and continuously employed, but who merely anticipates separation from his employment some months in the future. If such an interpretation were adopted, it would be to the selfish interest of the employer, in order to escape increased contribution rates for two benefit years instead of one, to terminate the employment at once when the first claim for benefits is filed. It is inconsistent with the fundamental purpose of the act to adopt a construction which puts a needless premium upon bringing employment to a premature end.

It is also to be presumed that the legislature did not intend the absurd result of making two benefit years available for individuals who happened to be able to anticipate the date of their separation from the employment, by retirement or otherwise, and only one year of benefits for those individuals who are not fortunate enough to be able to anticipate a sufficient time in advance when their present work will come to an end. § 645.17(1). The purpose and spirit of the employment and security act clearly is not to discriminate among employes so as to treat some more favorably than others.

The remedial nature of legislation does not justify a construction which gives to statutory language an application and meaning not intended by the lawmakers. Jung v. St. Paul Fire Dept. Relief Assn. 223 Minn. 402, 27 N. W. (2d) 151. The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. § 645.16.

It is not reasonable to construe M. S. A. 1945, 268.04, subd. 24, including the amendment of 1945, as indicating that the legislature intended to permit an individual to file a *valid* initial claim for benefits under the employment and security act when at the time of the filing he is regularly and continuously employed, but who then anticipates that he will be separated from his employment some months in the future by retirement or otherwise. In considering the occasion and necessity for the 1945 amendment and the circumstances under which it was enacted, as we are permitted to do under § 645.16(1) (2), it is reasonable to assume that the legislature by deleting the word *unemployed* intended only to expedite the determination of whether a claimant is unemployed in a statutory sense and thereby eliminate the unreasonably long delay between the time of a claimant's separation from employment and the determination of his eligibility to receive benefits.

The decision of the director of the division of employment and security is affirmed.

Affirmed.