**KENTUCKY UNEMPLOYMENT INSUR-
ANCE COMMISSION, Appellant,**

v.

**ANACONDA ALUMINUM COMPANY,**

**Appellee.**

Court of Appeals of Kentucky.

June 28, 1968.

Paul E. Tierney, Ben J. Mann, James G. Childers, Dept. of Economic Security, Frankfort, for appellant.

John E. Tarrant, Marvin J. Hirn, Bullitt, Dawson & Tarrant, B. E. Johnson, Louisville, for appellee.

MONTGOMERY, Judge.

The Kentucky Unemployment Insurance Commission appeals from a judgment in which it was held that the Anaconda Alu-

minum Company was not liable for unemployment insurance benefits to sixty-six claimants, former employees of Anaconda. The question is whether the claimants can draw benefits for two consecutive periods of twenty-six weeks each.

From October 1 to November 9, 1964, the sixty-six claimants and other employees of Anaconda were on strike. During the period of the strike, the sixty-six claimants and others filed claims for unemployment compensation benefits. Anaconda protested the claims. The Kentucky Unemployment Insurance Commission denied benefits to the claimants because a strike was in active progress. No benefits were paid to the claimants during the October-November 1964 strike.

On or about November 9, 1964, the strike ended and all of the claimants returned to their jobs at Anaconda. All of them continued to work on a regular basis until they were laid off on or about April 2, 1965, due to lack of work. After April 2, 1965, all of the claimants were continuously unemployed for more than a year, and for the purpose of this record are still unemployed. Since April 2, 1965, claimants have not performed any work and have not received any wages from Anaconda.

Based on claims filed on or about April 5, 1965, the claimants, beginning in April 1965, received the normal maximum benefits allowed by KRS 341.380, which in this case were twenty-six times their weekly benefit rate. The April claims were styled "Reopened Claims" by the Commission, apparently because of the claims filed during the October-November strike.

On October 26, 1965, after claimants had exhausted the normal maximum of twenty-six weeks' benefits, they again filed claims by which they sought to receive a second round of compensation benefits without any other or intervening employment since April 1965. Anaconda protested these claims on the ground that the claimants had already received twenty-six weeks of benefits, which, it is argued, is the maximum allowable for one period of compensable employment.

The referee upheld the allowance of benefits under these claims filed in October 1965. The basis of the referee's decision was that the claimants' benefit year began in October 1964, when they filed claims during the October-November strike, and expired in October 1965, one year later. Anaconda contended then, as it does now, that the claimants' benefit year did not begin until they filed claims in April 1965, when they were entitled to benefits, and that the benefit year did not expire until April 1966.

■ Appellant seeks to sustain its position by saying that the statute involved does not expressly or by implication prohibit a second series of benefit payments to the claimants. It is true that the statute does not expressly prohibit such payments, but by the same token it does not expressly authorize them either. Inasmuch as the appellant is a legislative creation, it must look to the statute to determine its authority. The implication is that a second series of benefit payments is unauthorized. KRS 341.090(2) provides that a "benefit year" means the period of time beginning with the date as of which a "valid claim" for benefits is filed and ending one full year later.

What constitutes a "valid claim" is the determining factor here. Appellant points to the following reference in KRS 341.-090(2): "As used in this subsection, 'valid claim' means any initial claim for benefits if the worker has satisfied the conditions required under subsection (5) of KRS 341.350."

The latter statute sets forth the qualifications of claimants to be eligible for benefits. First, the claimant must be unemployed, and then there are other qualifications not pertinent here. Subsection (5) merely provides the minimum base-period wages by amount and by period of time. Subsection (6) provides that if the claim-

ant has "satisfied the conditions of subsections (1), (2), (3), (4) and (5) of this section" and then has served a waiting period of one week, he is eligible for benefits. Seemingly, appellant, in making its first contention that two series of benefits are not prohibited, has overlooked subsection (7) which provides that KRS 341.350 and 341.370, setting forth qualifications and disqualifications, "shall be strictly construed."

Appellee contends that by the use of the phrase "valid claim" full meaning should be given the word "valid." KRS 446.080(4) provides: "All words and phrases (used in Kentucky Revised Statutes) shall be construed according to the common and approved usage of language * * *."

"Valid" is not a technical word. It is defined as "Founded on truth or fact; capable of being justified, supported, or defended; not weak or defective; well-grounded; sound; good; as, a valid argument; a valid objection." The definition continues: "Having legal strength or force; executed with the proper formalities; legally sufficient or efficacious; incapable of being rightfully overthrown or set aside, as, a valid deed, covenant, title, marriage." Webster's New International Dictionary, Second Edition, Unabridged. Undoubtedly the General Assembly by using "valid," as so defined, in connection with "claim" intended its common and approved usage. Had it intended otherwise, it could have used only "claim," and the statute would then have the meaning insisted on by appellant.

 The claims filed by the striking claimants in October 1964 did not fit this definition. All benefits under those claims were denied by the appellant; thus, they were not "valid claims." KRS 341.410 provides in part as follows:

"The commissioner acting through his duly authorized representatives shall determine the validity of each claim and, if benefits are allowed, the division shall notify all interested parties."

Thus, by the language of the statute, the validity of a claim is determined by whether benefits are allowed. If benefits are disallowed, the claim is not valid; thus, the denial of benefits on the claims filed in October 1964 brands those claims as invalid and renders them useless as the basis for an allowance of benefits. Hence, the claimants were entitled to collect only one series of benefits, as the lower court has held.

This is a matter of first impression in this jurisdiction. However, a referee's decision dated April 30, 1965, in Southern Bell Telephone & Telegraph Company v. Lillian S. Brock, A.D. No. 65–470, and a decision of the Franklin Circuit Court in Southern Bell Telephone & Telegraph Company v. Dawson, etc., CA No. 66885, are in harmony with the conclusion reached here. The referee held: "The plain and certain intent * * * was to prevent two successive valid claims without any intervening employment or, stated differently, to prevent the claiming and securing of two series of benefit payments from a single loss of employment." The same result was reached in the Franklin Circuit Court action.

Under similar statutes, the same result was reached in defining "valid claim" in Kalin v. Oliver Iron Mining Company, 228 Minn. 328, 37 N.W.2d 365. See also In re Jullin, 23 Wash.2d 1, 158 P.2d 319, 160 P.2d 1023; In re Baxter, 23 Wash.2d 935, 158 P.2d 330, 160 P.2d 1022; and Brown-Brockmeyer Company v. Herschberger, 45 Ohio Law Abst. 476, 67 N.E.2d 820. In Hartsville Cotton Mill v. South Carolina Emp. Security Com., 224 S.C. 407, 79 S.E.2d 381, the position is summarized thus:

"Where a claimant files a claim for benefits for which he or she is not eligible, it would require a strained construction of the language of the Law to hold that such constitutes a 'valid claim'. * * *."

It seems clear that the General Assembly did not contemplate or intend the payment of more than one series of benefits.

No merit is found in appellant's argument that the "contemporaneous construction" placed by it on this statute compels a different conclusion, especially in view of the "strict construction" provision of the statute. The attempts to distinguish the decisions referred to likewise are meritless, since they all deal with what a "valid claim" is, regardless of the different factual situations. The 1940 change in KRS 341.090(2) is construed as merely changing the beginning of the benefit year from the date of payment to the date of filing of a valid claim.

Judgment affirmed.

All concur.