Michael E. **AMMEND**, Respondent,

v.

**COUNTY OF ISANTI, Relator.**

No. C6–91–2024.

Court of Appeals of Minnesota.

June 2, 1992.

**4**

David A. Singer, Minneapolis, for respondent.

Peter D. Bergstrom, Ratwik, Roszak, Bergstrom, & Maloney, P.A., Minneapolis, for relator.

Considered and decided by KALITOWSKI, P.J., and LANSING and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

Respondent Ammend, an honorably discharged veteran, was discharged from his position in the Isanti County Sheriff's Department without a hearing. He sought relief from the Department of Veteran's Affairs, and the Department concluded that because Ammend was discharged from a position other than that of Chief Deputy he was entitled to the protections of the Veterans Preference Act. It ordered that Ammend be given full back pay and reinstated as a full-time non-Chief Deputy. Isanti County appeals from the department's decision and reinstatement order.

## FACTS

In August, 1987 Ammend was appointed by the Isanti County Board of Commissioners to the position of Jail Administrator in the Sheriff's Department. Then in early 1988 he was appointed to the position of Undersheriff by then Sheriff Schulz. In Isanti County the term Undersheriff is used to designate the Chief Deputy position.

As Chief Deputy Ammend was paid a monthly salary rather than an hourly wage and was no longer represented by the union. He met with the sheriff on confidential matters and represented him at county board meetings and community functions. He also served as supervisor of the road deputies.

In 1990, Ammend and the county's welfare fraud investigator, Larry Southerland, both ran against Sheriff Schulz in his bid for re-election. Schulz lost in the primary and then Southerland and Ammend competed for the final election. The campaign between Southerland and Ammend was somewhat acrimonious. Southerland won.

After Southerland took office in January of 1991, he and Ammend met to discuss Ammend's future in the department.

Southerland asked Ammend to resign his Chief Deputy position. Ammend refused to resign but said that he was looking for other work. Southerland told Ammend that he could no longer function as the Chief Deputy, that he must take the Undersheriff sign off of his office door, and that he would be given the least important and least desirable jobs in the department. Ammend did take the Undersheriff sign off of his door and his job duties changed from assisting the sheriff in confidential matters and supervising deputies to road deputy work.

Sometime after Southerland took office, Ammend proposed to Southerland and the County Board that he fill the empty welfare fraud investigator position. This request was not granted, however, and in March, 1991, Southerland dismissed ·Ammend from his work in the department. Ammend filed a claim against the county under the Veterans Preference Act alleging that he was dismissed without a hearing to which he was entitled. The agency concluded that, prior to being dismissed, Ammend had effectively been demoted to a non-Chief Deputy position and was therefore entitled to the protections of the Veterans Preference Act. It then ordered that he be reinstated in a non-Chief Deputy position.

## ISSUES

1. Did the agency err in concluding that Ammend was not a Chief Deputy and was entitled to the protections of the Veterans Preference Act when he was terminated from his employment?

2. Did the agency err by ordering Ammend to be reinstated as a non-Chief Deputy or welfare fraud investigator?

## ANALYSIS

On review, this court must presume that an agency decision is correct and should only reverse when the decision reflects an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence. *Crookston Cattle Co. v. Minnesota Dep't of Natural Resources*, 300 N.W.2d 769, 777 (Minn.

1980). Questions of fact and of policy are for administrative and not judicial determination, but courts have the power to determine questions of law. *State v. Civil Serv. Bd.*, 226 Minn. 240, 251, 32 N.W.2d 574, 581 (1948).

1. The Veterans Preference Act (VPA) prohibits public institutions from discharging a veteran "except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing." Minn.Stat. § 197.46 (1990). However, that statute does not apply to anyone employed as a

> private secretary, teacher, superintendent of schools, *or one chief deputy of any elected official or head of a department,* or to any person holding a strictly confidential relation to the appointing officer.

Minn.Stat. § 197.46 (emphasis added). The statute has been construed to exempt the head of a department as well as his chief deputy. *Granite Falls Mun. Hosp. & Manor Bd. v. State*, 291 N.W.2d 683, 685 (Minn.1980). The burden is on the county to prove that the employee held a position exempt from the protections of the VPA. *Gramke v. Cass County*, 453 N.W.2d 22, 25 (Minn.1990); Minn.Stat. § 197.46.

The parties agree that if Ammend was Chief Deputy at the time he was dismissed, then he is not entitled to the protections of the VPA and the agency erred by reinstating him. If he was not Chief Deputy when he was dismissed, then he is entitled to the VPA's protections and the agency's decision should be upheld. We conclude that the agency was correct in deciding that Ammend was demoted from the Chief Deputy position and was ultimately dismissed from a non-Chief Deputy position.

The question of whether an employee is a department head or chief deputy has been analyzed as a question of law. *See State ex rel. Sprague v. Heise*, 243 Minn. 367, 371–74, 67 N.W.2d 907, 910–12 (1954); *Schleck v. State*, 442 N.W.2d 359, 362 (Minn.App.1989). Likewise, the question of whether, on established facts, an employee has been demoted from a particular posi-

tion is a question of law. *Gorecki v. Ramsey County,* 437 N.W.2d 646, 649 (Minn. 1989). Therefore, we must defer to the agency's factual findings if they are reasonably supported by the evidence, and we must conduct a de novo review of the agency's legal conclusions.

The agency made the following factual findings:

1) After January 7, 1991 when Sheriff Southerland took office, Ammend's title as Chief Deputy became more nominal than real.

2) When Southerland took office he demanded Ammend's resignation from any paid association of any kind with the Sheriff's Department. Ammend refused to voluntarily resign, but said he was looking for work elsewhere.

3) Southerland did not dismiss Ammend or tell him he would be dismissed in the future.

4) Southerland told Ammend to remove the "Undersheriff" sign from his office door and that Ammend no longer had authority to function as Undersheriff. He said that Ammend would be relegated to performing the least desirable and least important jobs in the department.

5) Ammend did remove the Undersheriff sign from his door and the logs of his assignments from January 7 until he was dismissed show that he was assigned non-Chief Deputy jobs such as process serving, transporting prisoners, and road patrol.

6) On March 14, 1991, Southerland notified Ammend in writing that effective March 29 his employment in the Sheriff's Department would be terminated.

■ These findings are supported by the evidence in the record. Ammend and Southerland both testified that they had a meeting in early January, that Southerland asked for Ammend's resignation, and that Ammend refused to resign. Ammend testified that during the meeting Southerland told him that he would be doing the least desirable jobs in the department, and demanded that he take the Undersheriff sign off of his door. Southerland testified that

he told Ammend that he would not be involved in the supervisory or administrative decisions of the office, and that it was possible he told Ammend that he would be doing the least desirable jobs in the department. Also, a log of Ammend's daily tasks from January 8 to March 1, 1991 was admitted into evidence and supports the agency's finding that Ammend was assigned non-Chief Deputy jobs such as process serving, transporting prisoners, and road patrol.

Since we have found that the agency's factual findings are supported by the evidence, we now review its legal conclusion that after Southerland took office Ammend was demoted to a non-Chief Deputy position from which he was ultimately dismissed.

Although Minnesota courts have not defined what it means to be demoted, Black's Law Dictionary defines demotion as a "reduction to lower rank or grade, or to lower type of position." Blacks Law Dictionary, 5th Ed. (1983). After Southerland took office, he and Ammend met to discuss Ammend's future in the department. Southerland made it clear that if Ammend chose to continue working in the department, he would no longer be involved in the supervisory or administrative decisions in the department and that he would be relegated to performing the least desirable jobs. Ammend agreed to continue working and subsequently performed only non-Chief Deputy tasks. We conclude that this constituted a demotion and that Ammend became the type of employee that the Veterans Preference Act was intended to protect.

■ The county argues that because the County Board did not authorize it, Ammend could not have been demoted. It is settled that interpretation of an employer's action is a matter of substance and not of form. *Myers v. City of Oakdale,* 409 N.W.2d 848, 850 (Minn.1987). Therefore, the fact that Ammend was not demoted through a formal process is not dispositive. We think that the action Southerland took in changing Ammend's job duties was, in substance, a demotion, and that the agency did not err

in implementing the protections of the VPA.

■ 2. When a veteran has been denied rights under Minn.Stat. § 197.46 the agency can grant "such relief the Commissioner finds justified by said [statute]." Minn. Stat. § 197.481 Subd. 1 (1990). The agency ordered that Ammend either be reinstated as "a non-chief deputy performing tasks similar to those he performed after January 7, 1991" or "the welfare fraud investigator's position." This is a sound disposition because in essence it restores to Ammend what he lost when he was dismissed, and at the same time it gives the county latitude in choosing a specific position for Ammend which will fit the overall structure of the department.

## DECISION

We conclude that because Ammend was effectively demoted from the Chief Deputy position and was ultimately dismissed from a non-Chief Deputy position, the agency did not err in concluding that Ammend was entitled to relief under the VPA and in ordering that he be reinstated.

Affirmed.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. Whether an employee has been demoted from an employment position is a question of law. *Gorecki v. Ramsey County*, 437 N.W.2d 646, 649 (Minn.1989). The record indicates that the Isanti County Board of Commissioners makes all significant hiring, firing, and budgetary decisions. The board neither authorized Ammend's alleged demotion from the chief deputy position nor created a new position for him. Moreover, after Southerland became the sheriff Ammend continued to receive the chief deputy's salary and benefits. The Commissioner erred in concluding that Southerland's failure to immediately fire Ammend and his acquiescence to Ammend's request for time to find another job constituted a de facto demotion.

Further, the policies behind the Veterans Preference Act do not support the Commissioner's position. The Act was designed to protect veterans from the ravages of a political spoils system. *Id.* at 650. Here, Ammend voluntarily and knowingly relinquished his veteran's preference rights to become Sheriff Schulz's chief deputy and subsequently lost a contested and acrimonious election for the sheriff's position. He is not the innocent victim of a political spoils system the Veterans Preference Act was intended to protect. I would reverse the Commissioner.